

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2007

# USA v. Siegel

Precedential or Non-Precedential: Precedential

Docket No. 05-4537

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Siegel" (2007). *2007 Decisions.* Paper 1542.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1542

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4537
_____

UNITED STATES OF AMERICA,

vs.

MICHAEL BRUCE SIEGEL,

Appellant.
_____

On Appeal from the United States District Court
for the District of Delaware

(D.C. No. 04-cr-00138-1)
Chief District Judge:  The Honorable Sue L. Robinson
_____

ARGUED NOVEMBER 6, 2006

BEFORE: SLOVITER, CHAGARES,
and NYGAARD, Circuit Judges.

(Filed February 16, 2007 )
_____

Mark S. Greenberg, Esq. (Argued)
LaCheen, Dixon, Wittles & Greenberg
1429 Walnut Street, 13th Floor
Philadelphia, PA 19102
    Counsel for Appellant


Edmond Falgowski, Esq. (Argued)
Office of United States Attorney
1007 North Orange Street, Suite 700
Wilmington, DE 19801
    Counsel for Appellee


_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

A grand jury returned a four-count indictment charging

Michael Siegel, with transmission of child pornography, in

violation of 18 U.S.C. § 2252A (a)(1), and (b)(1) (Count 1);

attempted transmission of child pornography by computer, in

violation of 18 U.S.C. § 2252A (a)(1) and (b)(1) (Count 2);

transmission of obscenity by computer, in violation of 18 U.S.C.

2

§ 1462 (Count 3) and possession of child pornography, in violation of 18 U.S.C. § 2252A (a)(5)(B) and (b)(2) (Count 4).

Siegel pleaded guilty to Count 1 of the indictment. The government, in turn, agreed to dismiss the remaining counts of the indictment. The Revised Presentence Report placed Siegel in a criminal history III category based on four previous criminal history points, a result of several incidents of "indecent assault." Siegel objected to the calculation of the criminal history category, arguing that his criminal history category should have been a II, based upon three criminal history points, rather than a III, which is based on four criminal history points. The parties' disagreement stemmed from whether the two counts of indecent assault referenced in the report were "crimes of violence," adding one criminal history category point to Siegel's sentencing calculation.

The District Court, during a sentencing hearing, overruled Siegel's objection, noting that the victims' ages rendered them unable to consent to the conduct for which Siegel was convicted. Given the inability of the victims to consent, the District Court reasoned that Siegel's conduct necessarily qualified as a "crime of violence" within the meaning of the Sentencing Guidelines:

> I have reviewed the case law and I have reviewed the arguments by both, and I believe that the criminal history calculations that were made are appropriate under the law, that unlawful force as recited by the Government is force that is directed against a person without a person's consent, and force itself means the unlawful or wrongful action is meant.
>
> It seems that when we're dealing with minors who, by law, cannot consent, you are forcing them to engage in conduct. Therefore, I believe that the criminal history points were appropriately assigned . . . even though they were related, because they involve a crime of violence.

4

Accordingly, the District Court assigned Siegel four criminal history points, calculated the corresponding Sentencing Guideline range, and sentenced Siegel within that range to 65 months of incarceration.

## I.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction is premised on 28 U.S.C. § 1291 as this is an appeal from a judgment of conviction and sentence entered by the District Court.

We review a district court's factual determinations underlying the application of the Sentencing Guidelines for clear error. *United States v. McMillen*, 917 F.2d 773, 774 (3d Cir. 1990). We exercise plenary review, however, over a District Court's interpretations of the Sentencing Guidelines. *See United States v. Lennon*, 372 F.3d 535, 538 (3d Cir. 2004); *United States v. Taylor*, 98 F 3d. 768, 770 (3d Cir. 1996).

5

II.

The question presented here is whether Siegel's conviction for indecent assault under Pennsylvania law constitutes a "crime of violence" within the meaning of the Sentencing Guidelines.[1] We conclude that it does and will affirm the District Court's sentence.

A.

Siegel's sentence was calculated pursuant to the 2001 Sentencing Guidelines. According to § 4B1.2 of the Sentencing Guidelines, the section under which the District Court imposed the disputed criminal history point:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

---

1. A determination whether a prior offense is a "crime of violence" is a legal question. *See United States v. McQuilkin*, 97 F.3d 723, 727 (3d Cir.1996) ("The proper construction of the term "crime of violence" is a legal question⋯").

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The Commentary accompanying section 4B1.2 of the Guidelines provides further insight into the meaning of "crime of violence." The Commentary defines "crime of violence" as follows:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, *forcible sex offenses*, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its

7

nature, presented a serious potential risk of physical injury to another (emphasis added).

U.S.S.G. § 4B1.2 n.1.

## B.

We have stated that when a sentencing court is determining whether a prior crime meets the test of § 4B1.2, it should begin with the language of the statute and if that is clear, it should not look beyond the statute's text to the actual conduct. *United States v. Shabazz*, 233 F.3d 730, 732 (3d Cir. 2000). We generally employ the "formal categorical approach," announced in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), to determine whether an offense falls within the category of "crime of violence." *See Singh v. Ashcroft*, 383 F.3d 144 (3d Cir. 2004). Using that analysis, a court "must look only to the statutory definitions" of the specified offense, and may not "consider other evidence

8

concerning ... the particular facts underlying [a] conviction[ ]." *Taylor*, 495 U.S. at 600.

We apply that approach unless (1) "the language of the particular state statute at issue invite[s] inquiry into the underlying facts of the case," or (2) "the disjunctive phrasing of the statute similarly invites inquiry into the specifics of the conviction." *Singh*, 383 F.3d at 148; *see also Garcia v. Atty. Gen.*, 462 F.3d 287, 293 (3d Cir. 2006) (citing *Singh*, 383 F.3d at 161). Statutory phrases that have "relatively unitary categorical concepts" like "forgery," "burglary," "crime of violence," and "illicit trafficking in a controlled substance" do not invite an inquiry into the facts underlying the conviction. *Joseph v. Atty. Gen.*, 465 F.3d 123, 127 (3d Cir. 2006) (citing *Garcia*, 462 F.3d at 290).

C.

Under the categorical approach, we begin our analysis with the Pennsylvania statute, which defines indecent assault as follows:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (1) the person does so without the complainant's consent;
>
> (2) the person does so by forcible compulsion;
>
> (3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
>
> (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring;
>
> (5) the person has substantially impaired the complainant's power to appraise or control his or

her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

(6) the complainant suffers from a mental disability which renders the complainant incapable of consent;

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 PA. CONS. STAT. § 3126 (2000). "Indecent assault" under Pennsylvania law, 18 PA.. CONS. STAT. § 3126(a)(1-2), is defined as consisting of "indecent contact." "Indecent contact," in turn, is defined as touching "for the purpose of arousing or gratifying sexual desire in either person." 18 PA. CONS. STAT. § 3101; *see also Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 157 n. 14 (3d Cir. 2002).

11

Here, the Pennsylvania statute describes three distinct offenses, any or all of which constitute "indecent assault": indecent contact, causing the victim to have indecent contact with the offender, or intentionally causing the victim to come into contact with various bodily fluids. Further, the offense of indecent assault requires lack of consent, in various forms, by the victim. The key to determining the disjunctive nature of a statutory definition is whether the provision is disjunctive in a relevant sense; not necessarily whether the statute is formally divided into separate subsections. *See Singh,* 383 F.3d 163. This statute is disjunctive. It contemplates no less than eight different—although not necessarily mutually exclusive—scenarios which could constitute indecent assault. These scenarios fall into two categories. The first category, found in §§ 3126(1)-(3), forbids indecent contact between the perpetrator and victim because the victim, although capable of

12

consenting to the conduct at issue, did not. By contrast, §§ 3126(4)-(8) criminalizes conduct to which the victim was incapable of consenting for one reason or another. Clearly, the statute invites inquiry into the underlying facts of the case because we are unable to determine from the face of the statute which crime or crimes Siegel pleaded guilty to. Therefore, the statute is disjunctive in a relevant sense and departure from the categorical approach is appropriate under *Singh*, 383 F.3d at 162.

Commonly, the best way to resolve the question raised by a conviction under a statute phrased in the disjunctive, or structured in outline form, will be to look to the charging instrument or to the plea colloquy. *Id*. at 163 (citing *Valansi v. Ashcroft*, 278 F.3d 203 (3d Cir. 2002)). Here, the charging documents — the criminal informations pertaining to the assaults — do not specify which statutory provision Siegel

13

allegedly violated. Rather, the information recites verbatim all eight statutory categories criminalized by § 3126. Siegel suggests, therefore, that the Pennsylvania statute is ambiguous. Specifically, while he concedes that by their terms, only two of the eight provisions of § 3126—subsections 2 and 3—qualify as "forcible sexual offenses," he maintains that it was impossible for the District Court to have determined that his indecent assaults fell within these two subsections, because it was equally likely that he had pleaded guilty to violating one of the remaining six statutory sections.

Siegel's argument is premised on the assumption that only certain provisions of § 3126 involve the use of force. The Government counters, arguing that where, as here, the victim of the indecent assault was a minor, *any* violation of § 3126 necessarily constitutes a "forcible sexual offense" because the

14

minor was legally incapable of consent. The District Court

agreed, noting,

> It seems that when we're dealing with minors who, by law, cannot consent, you are forcing them to engage in conduct. Therefore, I believe that the criminal history points were appropriately assigned.

Although we ultimately agree that a violation of 18 PA.

CONS. STAT. § 3126 which involves a minor is a "forcible sexual

offense,"and therefore, a "rime of violence,"we disagree with

the District Court's reasoning. Equating lack of consent with

force proves too much. If lack of consent were synonymous

with force, many crimes of stealth or surprise — or indeed

crimes which involve insignificant or minor touching — could

be shoehorned into "crimes of violence." The Court of Appeals

for the Seventh Circuit has persuasively articulated the fallacy

of equating force with the absence of consent:

15

> An inference of violence from mere unconsented-to physical contact, the government's first reason for arguing that every felonious sexual act with a minor is *per se* a crime of violence, would not wash in this circuit. It would transform any unconsented-to touching that the law has made a felony into a crime of violence, including picking a person's pocket, a crime that we have held is not a crime of violence."

*United States v. Shannon*, 110 F.3d 382, 385 (7th Cir. 1997).

The plea colloquy is of no help because it is not available. A transcript of a telephone conference between the District Judge and counsel about the transcript of the plea colloquy contains the Government's admission that

> We have not made any progress. We have, I think, given Delaware County an opportunity to get the records. We had pretty much constant contact with them for the last two months. They told us they needed two months in order to be able to find the papers. We impressed upon them the significance of it. We've spoken to the supervisor in question and he has indicated that they needed about two months and they can't find it. They say because it's eight years old and it's

16

> in a warehouse, that they have looked for it.  It's
> just that they've been unable to locate it.

Since its decision in *Taylor*, however, the Supreme Court has looked at the categorical approach and modifications thereto in the context of situations where, like here, a defendant has pleaded guilty to a prior offense.  In *Shepard v. United States*, the Supreme Court held that "a later court determining the character of an admitted [prior conviction] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factfinding by the trial judge to which the defendant assented," or other "comparable judicial record[s]" of the prior conviction. 544 U.S. 13, 16-17 (2005).  Thus, given *Shepard's* strictures on review, the vagueness of the Pennsylvania charging documents, and the absence of the plea colloquy from Siegel's sentencing hearing in Pennsylvania court, Siegel argues that it

17

was impossible for the District Court to determine that Siegel's indecent assaults involved the use of force. We are not persuaded.

We note that there is a description of the offense conduct in the Presentence Report, which states that Siegel actually physically restrained and forced the victim in both instances to accede to his assaults. Indeed, the Presentence Report describes the June 17, 2002 assault this way:

> [The victim] stated the [Siegel] sat down beside her and started touching and grabbing her breasts. [The victim] stated she pushed [Siegel's] hand away and told him to stop. [The victim] then got off the couch and went out to a porch area, but [Siegel] followed her, forced her against a railing, and placed his hand under her shirt and fondled her breasts.

PSR § 46.[2]

---

2. Judge Sloviter believes that a Presentence Report ordinarily does not satisfy the demand for evidentiary

(continued...)

18

Moreover, the record makes clear that Siegel received the Presentence Report — including the description of the indecent assaults in issue — before his sentencing hearing and was given the opportunity to file objections. There is nothing in this record showing that Siegel objected to the factual description of the assaults, nor has he challenged these descriptions on appeal. Thus the Presentence Report – a factual record adopted by Siegel by his failure to object – contains a statement of the facts underlying the indecent assaults.

---

2.    (...continued)
certainty required by *Shepard v. United States*, 544 U.S. 13 (2005), before a prior conviction can be used as a predicate offense for purposes of a sentencing enhancement. She joins the majority in this case because it is possible to regard Siegel's failure to object to the facts in the Presentence Report as an admission, which the Supreme Court in Shepard stated satisfies its standard of competent evidence. *Id.* at 26. She awaits further amplification as to the application of Shepard to Presentence Reports by the Supreme Court or this court.

19

In *United States v. Cullen*, the Court of Appeals for the Eight Circuit held that "[b]y not objecting to the PSR's factual allegations, [the defendant] has admitted them." 432 F.3d 903, 905 (8th Cir. 2006) (citation omitted). We agree, and hold that the facts averred in the PSR acceded to by Siegel avoid the "collateral trial," and "judicial factfinding" preempted by the Court's holding in *Shepard.*

## IV.

For these reasons we will affirm Siegel's sentence.