OPINION
SLOVITER, Circuit Judge.
Harry Berroa appeals his convictions of violating the Hobbs Act, 18 U.S.C. § 1951(a), and of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1). He also asserts that “the sentence [he received from the District Court] must be vacated.” Appellant’s Br. at 53. We will affirm in all respects.[1]
I.
In August 2006, Berroa and his half-brother, Jesse Dawson, entered a retail store in Philadelphia called the Appliance Factory armed with a handgun and demanded money from Frank Dush, the sole store employee. As Dush tried to escape, Berroa and Dawson tackled and beat him, discharged a firearm, took about $1,075 which Dush carried, and duct-taped Dush’s “whole body.” App. at 407.
Berroa and Dawson were apprehended that same day and thereafter charged with conspiracy to interfere with and interfering with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) (the “Hobbs Act”), and knowingly using and carrying, and aiding and abetting in the use and carrying of, a firearm during and *269 in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1) (Count 3).[2]
After a trial in July 2007, the jury was unable to reach a verdict and the court declared a mistrial. Approximately two months later, Berroa was tried again for the same charges and was convicted by the jury on two of the three charges, but the District Court granted Berroa’s request for a new trial because it had erred in allowing the jury to have access to impermissible evidence.
After Dawson was captured, family members of both Berroa and Dawson retained two lawyers, Nino Tinari as counsel for Dawson and Eugene Tinari, his son, as counsel for Berroa. Dawson pled guilty and agreed to cooperate with the government.
Berroa maintained his innocence. He also sent the District Court at least two letters stating dissatisfaction with Eugene Tinari’s representation. Ten days before the third trial was to begin, the District Court held a pretrial conference at which Berroa responded in the negative when asked whether he was “ready to proceed with Mr. Tinari as [his] lawyer[.]” App. at 102. Berroa’s reluctance stemmed from disagreements with Tinari over whether and when to file motions challenging federal jurisdiction. Despite Berroa’s complaint that Tinari’s “heart just [wasn’t] into it,” App. at 111, the District Court said, “I don’t think Mr. Berroa has given me any good reasons ... not to proceed.” App. at 123.
The third jury convicted Berroa of violating the Hobbs Act and of using or carrying a firearm during and in relation to a crime of violence. He was sentenced to a total of 180 months — -fifty-four months for the Hobbs Act violation, 120 months for using a firearm during and in furtherance of a crime of violence, and six months for criminal contempt (arising from an outburst by Mr. Berroa during the trial). Berroa timely appealed.
II.
Berroa presses five principal challenges to his conviction and sentence, and makes two other claims which he concedes are foreclosed by binding precedent.
Berroa contends that the father-son relationship between his counsel and Dawson’s counsel led to a clear conflict of interest, and that, as a result, his conviction should be vacated and the matter remanded to the District Court. Berroa’s conflict of interest claim has two prongs, one being his assertion that the District Court should have inquired into a potential conflict and the other being that there was an actual conflict of interest. Considering first Berroa’s potential conflict of interest claim, Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), is dis-positive. In Mickens, the Court addressed precisely the same question at issue here: what remedy is available to the defendant “where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known.” Id. at 164, 122 S.Ct. 1237. The Court held that the defendant had no remedy for failure to inquire into the potential conflict of interest, id. at 170-73, 122 S.Ct. 1237, but that such a defendant would still have to show that an actual conflict of interest existed which adversely affected his counsel’s performance, id. at 174, 122 S.Ct. 1237 (“it was at least necessary, to void the conviction, for petitioner to establish that *270 the conflict of interest adversely affected his counsel’s performance”).[3] We thus reject Berroa’s contention that the District Court’s failure, sua sponte, to inquire into any potential conflict of interest entitles him to an automatic remand without the showing of any prejudice.
We are not in a position to decide Berroa’s claim of actual conflict. See generally Mickens, 535 U.S. at 171, 122 S.Ct. 1237 (defining “ ‘an actual conflict of interest’ ” as “a conflict that affected counsel’s performance”) (emphasis omitted). We have stated that such an issue is “better reserved for 28 U.S.C. § 2255 [habeas corpus] actions” rather than direct appeal, because “collateral review allows for adequate factual development of the claim.... ” United States v. Morena, 547 F.3d 191, 198 (3d Cir.2008). Berroa has “reserve[d] the right to pursue his conflict-of-interest claim via a § 2255 motion.... ” Appellant’s Reply Br. at 3 n.l.
Berroa next contends that his conviction must be reversed because the District Court violated his Sixth Amendment right to have the counsel of his choosing. He relies on the decision in United States v. Gonzalez-Lopez, where the Court held that a conviction must be reversed when it occurs after a trial in which the defendant was wrongfully denied his choice of counsel. 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). The Gonzalez-Lopez Court “accepted] th[e] premise” that the district court in that case erroneously denied respondent his choice of counsel. Id. There is no basis for a similar conclusion here.
In this case, Berroa’s request to change counsel came too late and was based on too little. “A last-minute request for substitution of counsel.... need not be granted unless ‘good cause’ is shown for the defendant’s dissatisfaction with his current attorney.” United States v. Goldberg, 67 F.3d 1092, 1098 (3d Cir.1995). “Good cause” is defined as “a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney.” Id. (citing United States v. Welty, 674 F.2d 185, 188 (3d Cir.1982)).
None of these existed here. As stated above, there was no evident conflict of interest at the pretrial conference and Berroa did not raise that issue until his appeal. Further, although Berroa complained three months before trial that he was “having grave difficulty contacting” Tinari, App. at 95, and two months before trial that Tinari was “not responding to [his] letters,” App. at 96, the record does not show a complete breakdown of communication. On the contrary, by the time of the pretrial conference, Berroa and Tinari had discussed their legal strategy, albeit taking different positions.
As to the “irreconcilable difference” consideration, Berroa’s disagreements with Tinari did not appear insuperable at the pretrial conference, as Tinari stated unequivocally that he could “effectively represent Mr. Berroa.” App. at 113-14. A dispute over strategy between a defendant and counsel is not by itself “good cause” for a last-minute substitution of counsel. Further, even though Tinari was reluctant to do so, he ultimately did file a pretrial motion challenging federal jurisdiction in accordance with Berroa’s wishes. Also, as this was Berroa’s third trial, the District Court’s concern for efficiency was legitimate. See Goldberg, 67 F.3d at 1098 (noting that district courts may consider the *271 efficient administration of justice before substituting counsel) (citation omitted).
Berroa next asserts that there was insufficient evidence to establish that his robbery obstructed or affected interstate commerce. We must determine whether, viewing the evidence in the light most favorable to the Government, substantial evidence supports the jury’s guilty verdict. United States v. Urban, 404 F.3d 754, 762 (3d Cir.2005) (citation omitted).
The Hobbs Act extends federal jurisdiction to a robbery that “in any way or degree obstructs, delays, or affects [interstate] commerce.... ” 18 U.S.C. § 1951(a). Therefore, the evidence must show that the target of the robbery, the Appliance Factory, “engaged in interstate commerce.” Urban, 404 F.3d at 767. Despite Berroa’s efforts to convince us otherwise, the retail activities of the Appliance Factory were not “ ‘local in character.’ ” Appellant’s Br. at 40 (quoting United States v. McGuire, 178 F.3d 203, 212 (3d Cir.1999)). Rather, some of the Appliance Factory’s inventory had been purchased in New Jersey. Also, the robbery impacted the ordinary operations of the Appliance Factory by forcing the store to close for the remainder of the day on which the robbery occurred. See United States v. Jimenez-Torres, 435 F.3d 3, 8 (1st Cir.2006) (Government may demonstrate an effect on commerce by proving that a robbery resulted in the closing of a business). Such evidence is sufficient. See Urban, 404 F.3d at 766 (“ ‘[I]n any individual case, proof of a de minimis effect on interstate commerce is all that is required’ ... [a]nd, ... such a ‘de minimis effect’ in a[ ] Hobbs Act case need only be ‘potential.’ ” (quoting United States v. Clausen, 328 F.3d 708, 711 (3d Cir.2003) and United States v. Haywood, 363 F.3d 200, 209-10 (3d Cir.2004))).
We next address Berroa’s claim that his conviction must be reversed because the District Court admitted the testimony of an FBI agent that it was “very common” for “the FBI [to] investigate robberies of businesses in the City of Philadelphia....” App. at 474. Immediately after this statement, the District Court cautioned the jury that the agent’s testimony was “submitted just for background” and that the jurors “must decide this case based on the elements of the federal crime as [the District Court] ... define[s] it ... at the end of the case.” App. at 475.
Berroa argues that the agent’s testimony was inadmissible because its probative value was “ ‘substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.’ ” Appellant’s Br. at 48 (quoting Fed.R.Evid. 403). We owe the District Court “very substantial discretion” in its ruling on whether to admit testimony under Rule 403. United States v. Long, 574 F.2d 761, 767 (3d Cir.1978). A district court’s decision under Rule 403 will only be reversed if its analysis and conclusions are “arbitrary or irrational.” United States v. Universal Rehab. Servs. (PA), Inc., 205 F.3d 657, 665 (3d Cir.2000) (quotation and citation omitted).
Admitting the testimony was neither arbitrary nor irrational. The District Court found that the testimony was necessary to disabuse the jurors of the “suggestion that [Berroa] ha[d] been singled out or discriminated against” through prosecution in federal court. App. at 466. Although the probative value of this testimony was low, we cannot concur that it “could well have led the jury to believe that the federal government’s involvement, in and of itself, demonstrated” federal jurisdiction over Berroa’s robbery, particularly in light of the District Court’s limiting instruction. Appellant’s Br. at 51.
*272 Finally, Berroa contends that the ten-year mandatory minimum sentence the District Court imposed under 18 U.S.C. § 924(c)(l)(A)(iii) was “constitutionally infirm” as neither the jury nor the court made an “express finding” that Berroa had discharged a firearm. Appellant’s Reply Br. at 28. Berroa correctly concedes that his claim that the jury had to find that Berroa discharged the firearm before the court could impose the ten-year mandatory minimum is foreclosed by binding precedent. See United States v. Williams, 464 F.3d 443, 449 (3d Cir.2006) (citing Harris v. United States, 536 U.S. 545, 568, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), for the proposition that district courts (as opposed to juries) may find that a firearm was discharged and sentence defendants to the ten-year mandatory minimum).
Nor can we accept Berroa’s claim that the “[District [Cjourt failed to render the finding of fact required before subjecting Mr. Berroa to a ten-year consecutive term.... ” Appellant’s Reply Br. at 26. Although the District Court referred to the crime as “an armed robbery,” it did not state at sentencing that the gun was discharged during the robbery. App. at 769. However, Berroa does not cite and we have not discovered authority supporting his assertion that an express finding on the record is required. Moreover, the District Court had ample support for its sentence from evidence adduced at trial and the PSR, which said “[Berroa] discharged the firearm into a refrigerator located in the store.” PSR ¶ 22. Berroa reviewed the PSR and did not dispute the finding that he had discharged a firearm during the robbery. See United States v. Siegel, 477 F.3d 87, 93-94 (3d Cir.2007) (holding that defendant adopted facts found in the PSR by not objecting). Under these circumstances, the District Court’s failure explicitly to state that Berroa discharged a firearm was not error.
III.
For these reasons, we will affirm the judgment and sentence of the District Court.

. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

. After attending two preliminary hearings, Dawson failed to appear for a third. This resulted in a bench warrant for his arrest. He was a fugitive until he was apprehended in November 2007.

. Berroa misreads Mickens in arguing that "[a] failure to make inquiry into a potential conflict requires that conviction be vacated and the matter remanded for further proceedings.” Br. for Appellant at 28 (citing Mickens, 535 U.S. at 171-72, 122 S.Ct. 1237).