NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3980
_____

UNITED STATES OF AMERICA

v.

HARRY JACKSON,
                              Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 08-731-001)
District Judge:  Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
July 16, 2010
_____

Before:  RENDELL, JORDAN, and GREENAWAY, JR., Circuit Judges

(Opinion Filed: August 17, 2010)

_____

OPINION

GREENAWAY, JR., Circuit Judge

Harry Jackson pled guilty to violations of 18 U.S.C. § 1951(a), conspiracy to

interference with interstate commerce by robbery; 18 U.S.C. §§ 1951(a), (b)(1)(3), and

(2)(a), interference with interstate commerce by robbery, and aiding and abetting; and 18

U.S.C. §§ 924(c)(1) and (2), use of a firearm during a crime of violence. The United States District Court for the Eastern District of Pennsylvania sentenced him to 135 months' imprisonment. Jackson appealed to this Court to challenge his sentence. Jackson's counsel ("Counsel") petitions this Court for permission to withdraw from representing Jackson on appeal, pursuant to Anders v. California, 386 U.S. 738 (1967). For the reasons addressed below, we will grant Counsel's petition and affirm the sentence imposed by the District Court.

## I. BACKGROUND

We write solely for the benefit of the parties and recount only the essential facts.[1]

The charges in this case arose from Jackson's participation, with Jeffrey Prout, in an armed robbery of $700,000.[2] Prior to the robbery, Jackson, was terminated from his job as a guard at Dunbar Armored, Inc. ("Dunbar") for routinely submitting incorrect paperwork and for making an incomplete cash delivery. On November 14, 2008, Jackson and Prout staked out Whitman Check Cashing in Philadelphia, Pennsylvania, where they awaited the arrival of a Dunbar truck. The truck arrived, and a guard holding a bag of money entered Whitman Check Cashing at about 9:00 a.m. Prout approached the guard, pushed him to the ground, put a gun to his head, and took the bag, which contained

---

[1] The following facts are drawn from the revised Presentence Investigation Report ("PSR"). Jackson's failure to contest the facts recounted in the PSR during his sentencing hearing constitutes an admission of those facts. United States v. Siegel, 477 F.3d 87, 93 (3d Cir. 2007).

[2] Prout was charged separately and pled guilty to all charges.

$700,000, most of which were $100 bills. During the robbery, Jackson held the door of the store shut from outside. Both Jackson and Prout fled the scene.

A witness described Jackson as wearing a blue sweatshirt. A blue sweatshirt was found in a nearby alley, along with a cell phone that contained Prout's telephone number in the address book and a text message to Jackson's girlfriend that said, "I'm on my mission." Jackson also called his girlfriend from a different phone after the robbery. When she asked Jackson why he was not calling from his phone, he responded, "I don't know where it is at."

On November 15, 2008, Jackson was arrested by Federal Bureau of Investigation agents at 1432-B North 15th Street in Philadelphia.[3] His car was found nearby. Agents discovered a loaded Charter Arms .38 caliber revolver inside of the trunk of Jackson's car, as well as some of Prout's paperwork. Subsequent DNA analysis revealed Prout's DNA on the revolver.

On May 26, 2009, Jackson pled guilty to all charges. The PSR calculated Jackson's sentencing guideline range as forty-one to fifty-one months' imprisonment, based on a total offense level of twenty-two and a criminal history category of I. A consecutive sentence of eighty-four months' imprisonment was, however, mandatory

---

[3] Prout was arrested on November 18, 2008 in Delaware. In the apartment where Prout was arrested, FBI agents found many newly-purchased and expensive electronics, plus $3,600 in cash, in $100 bills. Mike Dingle, who was with Prout at the time of his arrest, had an additional $8,900 in cash, also in $100 bills.

pursuant to 18 U.S.C. § 924(c)(1). Thus, the total sentencing range was calculated as 125 to 135 months' imprisonment.

At the October 5, 2009 sentencing hearing, the District Court adopted the PSR's United States Sentencing Guidelines ("Guidelines") calculations, to which Jackson did not object. Prior to announcing Jackson's sentence, the District Court addressed Jackson's failure to return the stolen money or provide information as to its location:

> There's been some discussion mainly by [Counsel] about potential fear, potential this, potential that. I don't know. But I do know that there's $700,000 missing and that Mr. Jackson has not come forward. I don't know whether it's fear. I don't know but I do know that there's $700,000 missing and that we all make mistakes. And as [Assistant United States Attorney] Mr. Wzorek said, this is way beyond a mistake. But sometimes when you do something that's very bad as this is, sometimes there's a chance to rectify it somewhat.
>
> You can't take back the terror of the—that was imposed on the guard but maybe you can get the money back for the—the victim—the victims. Not done here. And no attempt to, as I understand it, to discuss things.

(App. Vol. III at 60-61.) The District Court sentenced Jackson to 135 months' imprisonment.

On October 12, 2009, Jackson filed a notice of appeal with this Court, asserting that the District Court abused its discretion and imposed an unreasonable sentence by sentencing him at the highest end of the Guidelines range. Specifically, Jackson argues that the District Court placed too much weight on the fact that he neither returned the stolen money nor provided information about the money's location. Absent the allegedly

4

undue weight the District Court granted these facts, Jackson argues that his positive personal qualities would have resulted in a sentence at the lower end, or below, the Guidelines range.

On January 29, 2010, Counsel filed an Anders brief (the "Brief"), in which she asserted that there exist no nonfrivolous grounds for appeal.

## II.  JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III.  STANDARD OF REVIEW

"In Anders v. California, 386 U.S. 738 (1967), the Supreme Court explained the general duties of a lawyer representing an indigent criminal defendant on appeal when the lawyer seeks leave to withdraw from continued representation on the grounds that there are no nonfrivolous issues to appeal." United States v. Marvin, 211 F.3d 778, 779 (3d Cir. 2000).  Under Anders, counsel seeking to withdraw from representation must "satisfy the court that he or she has thoroughly scoured the record in search of appealable issues" and then "explain why the issues are frivolous." Id. at 780.  "The Court's inquiry when counsel submits an Anders brief is thus twofold: (1) whether counsel adequately fulfilled [Third Circuit Local Appellate Rule 109.2's] requirements;[4] and (2) whether an

---

[4] Local Appellate Rule 109.2 provides, in pertinent part:

Where, upon review of the district court record, counsel is persuaded that

5

independent review of the record presents any nonfrivolous issues." United States v. Youla, 241 F.3d 296, 300 (3d Cir. 2001). Where frivolousness is patent, however, "we will not appoint new counsel even if an Anders brief is insufficient to discharge current counsel's obligations to his or her client and this court." United States v. Coleman, 575 F.3d 316, 321 (3d Cir. 2009) (quotation marks omitted).

## IV. ANALYSIS

The Brief identifies two appealable issues, both of which Counsel believes to be frivolous: (1) that the District Court placed too much weight on the fact that Jackson neither returned the stolen money nor furnished information about the money's location; and (2) that the sentence itself was unreasonable in light of the factors established in 18 U.S.C. § 3553(a).[5] Though stated as two issues, both concern the reasonableness of the

> the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to Anders v. California, 386 U.S. 738 (1967), which must be served upon the appellant and the United States. The United States must file a brief in response. Appellant may also file a brief in response *pro se*. . . . If [the court] finds arguable merit to the appeal, or that the Anders brief is inadequate to assist the court in its review, it will appoint substitute counsel, order supplemental briefing and restore the case to the calendar.

[5] The § 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;

sentence imposed on Jackson by the District Court. The Government filed a brief in reply, agreeing with Counsel that there are no nonfrivolous grounds for appeal. Jackson did not file *pro se* an informal brief explaining why his appeal was not frivolous.

To determine whether a sentence is unreasonable, we first look to whether the sentencing court committed a serious procedural error, United States v. Lopez-Reyes, 589 F.3d 667, 670 (3d Cir. 2009) (citing Gall v. United States, 552 U.S. 38, 51 (2007)), and then "review the substantive reasonableness of the sentence under an abuse of discretion standard." Lopez-Reyes, 589 F.3d at 672. The appellant bears the "burden of demonstrating unreasonableness." United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). The appellate court is highly deferential to the District Court when reviewing the sentence, because the lower court is best suited to impose a sentence based on the facts of the case. United States v. Ashburn, 502 F.3d 313, 329 (3d Cir. 2007). As

---

> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-- . . .
> (5) any pertinent policy statement-- . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm. United States v. Wise, 515 F.3d 207, 218 (3d Cir. 2008).

The Brief posits that the District Court properly applied the § 3553(a) factors. Thus, we must "determine whether the '§ 3553 factors were reasonably applied to the circumstances of the case.'" United States v. King, 604 F.3d 125, 145 (3d Cir. 2010) (quoting United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006)). "We will affirm if a 'reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.'" Id. at 145 (quoting Tomko, 562 F.3d at 568).

According to Counsel, the District Court considered the fact that the money was never returned as a part of the nature and circumstances of the offense; the 135-month prison sentence imposed was within the Guidelines range; there is no evidence that the District Court weighed the failure to return the stolen money more heavily than any other factor; and there is no evidence of abuse of discretion by the District Court.

We find that the District Court reasonably applied the § 3553(a) factors in this case. The District Court took into account Jackson's positive characteristics, including his excellent employment history and the dedicated support of his family. (App. Vol. III at 60.) The District Court, however, also noted that Jackson's gun was used in the robbery, and that because Jackson was familiar with Dunbar's operations, he may have

8

orchestrated the crime. (Id.) Further, it is undisputed that Jackson played a major role in the armed robbery. The District Court commented that while Jackson could never take back the terror imposed on the Dunbar guard, he (Jackson) could have mitigated the damage done by getting the money back for the victims. (Id. at 61.) He did not.[6]

Viewed as a whole, the record demonstrates that the court "adequately considered the § 3553(a) factors and reasonably applied them to the circumstances presented in [Jackson's] particular case." Cooper, 437 F.3d at 332. Because the Guidelines sentence imposed "falls within the broad range fo possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." Wise, 515 F.3d at 218. For that reason, we find that the Brief is adequate under Anders.

Our independent review of the record confirms that there are no other non-frivolous issues to appeal. Jackson entered his plea in open court, and did not contest the PSR's contents or the District Court's calculation of the Guidelines range.

## V. CONCLUSION

For the above-stated reasons, we will affirm the judgment of the District Court and grant Counsel's motion to withdraw from the representation of Jackson.

---

[6] While there is no evidence that Jackson knew the money's whereabouts, Counsel, during an on-the-record sidebar, indicated that Jackson did know where the money was, and refused to discuss its location due to his fear of reprisal. (See App. Vol. III. at 62.)