**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1851
_____

UNITED STATES OF AMERICA

v.

JOSÉ AMAYA-VASQUEZ,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-16-cr-0016-001)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 10, 2019

Before: AMBRO, BIBAS, and FUENTES, *Circuit Judges*

(Filed: January 11, 2019)
_____

OPINION[*]
_____

BIBAS, *Circuit Judge*.

José Amaya-Vasquez kidnapped his ex-girlfriend and their three-year-old daughter at

knifepoint. For three days, he drove them halfway across the country and repeatedly raped

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not
constitute binding precedent.

his ex, sometimes even in the same bed as their daughter. He now claims that his twenty-four-year prison sentence is unreasonable and that the District Court violated due process by considering his abusive history. But sentencing judges can consider any facts that are more likely than not true. And the sentence was substantively reasonable and well within the Court's broad discretion. So we will affirm.

## I. BACKGROUND

### A. Before the crime of conviction

Amaya-Vasquez is a native and citizen of Honduras. He had a rough childhood: gangs plagued his town and his parents abused him. In 2005, at the age of twenty, he illegally entered the United States. He was detained and ordered to leave. But instead, he moved to New York City. In 2010, he began dating the victim of his crimes.

He was abusive from the start. Soon after they began dating, Amaya-Vasquez accused the victim of infidelity and put his hands around her throat. Their landlord heard the commotion and called the police, but the victim told them nothing was wrong. They soon moved to Kansas City, where things got worse. He grew angry when the victim got a nose ring, so he dragged her into a shed, gagged her, and put a knife to her side. Another time, when he thought the victim was too friendly at work, he threatened her with a machete.

In 2012 or 2013, the victim gave birth to their daughter. For a time, this pacified him. But the calm was not to last: In 2014, Amaya-Vasquez accused her of infidelity. He pushed her into a table and threw a hairbrush at her. The victim said their relationship was over and called the police. He was arrested and deported.

2

He did not stay away for long. A few months later, he illegally reentered the United States, returned to Kansas City, and moved in with the victim. She made clear that their relationship was over, but agreed to live with him for their daughter's sake. They fought and he moved out.

But she soon fell on hard times. With nowhere else to go, she moved in with Amaya-Vasquez. And he continued to be violent. He raped her at knifepoint and threatened her children from a prior relationship. She called the police, but they did not arrest him.

Soon, Amaya-Vasquez demanded that they move back to New York. When she refused, he grabbed her hair and punched her several times. She escaped and got a protective order. But he kept texting her and threatening her other children. One day, he asked if he could pick up their daughter from daycare. Not knowing his plan, she agreed.

## B. The crime of conviction

The victim walked into a trap. She met with Amaya-Vasquez to get their daughter back. But he had a knife. He duct-taped her wrists and ankles, threatening to kill her if she screamed. He then took her to an abandoned house and raped her twice. The next morning, he bound her again and put her and their daughter in the car. For the next two days, they drove towards New York. The victim did all she could to escape, texting her friends and turning on her cellphone's GPS, but nothing seemed to work. Each time they stopped at a motel, he raped her—sometimes while their daughter was in the same bed.

By tracking the victim's cellphone, the police found them at a motel in New Jersey. Amaya-Vasquez fled into the dead of night. But after an hours-long pursuit, the police caught and arrested him.

### C. Procedural history

Amaya-Vasquez pleaded guilty without a plea agreement to kidnapping, interstate domestic violence, and illegal reentry. The Presentence Report calculated his sentencing-guidelines range as 235 to 293 months in prison. It included all the facts above, most of which came from interviews with Amaya-Vasquez and the victim.

The sentencing judge asked for objections to the report, but Amaya-Vasquez had none. So the judge accepted and relied on it. He then heard Amaya-Vasquez's expert witness testify that he might have a dependent personality disorder. And he heard defense counsel argue for mitigation based on that testimony and his client's childhood. After considering all the evidence, the report's background information, the nature of the crime, Amaya-Vasquez's age, and the need for deterrence, the judge sentenced him to 288 months (24 years). Again, the judge asked for any objections; again, Amaya-Vasquez had none.

## II. THIS SENTENCE IS JUSTIFIED

Amaya-Vasquez now brings two claims: first, that the sentencing judge violated due process by considering the Presentence Report's factual background, not just the crime of conviction; and second, that his sentence is substantively unreasonable. Both claims fail.

### A. Sentencing judges may consider a defendant's background if the facts are more likely than not true

Amaya-Vasquez argues that due process and the presumption of innocence limit sentencing judges to considering the crime of conviction. But that is not the law. And he never

objected at sentencing, so we review only for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732-37 (1993). There was no error, let alone plain error.

As long as facts are proved more likely than not true, sentencing judges have broad latitude to consider defendants' backgrounds. *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009). That principle is longstanding and does not offend due process. *Williams v. New York*, 337 U.S. 241, 246-51 (1949). And Congress has expressly forbidden any limitation on a sentencing judge's consideration of a defendant's "background, character, and conduct." 18 U.S.C. §3661; *see also Pepper v. United States*, 562 U.S. 476, 491 (2011).

So the only question is whether the facts in the Presentence Report were more likely than not true. They were. The report relayed the victim's statements to the police and the FBI. Amaya-Vasquez corroborated much of her narrative by pleading guilty to the kidnapping, domestic violence, and illegal reentry. And he did not—and still does not—dispute the accuracy of her story. *See United States v. Siegel*, 477 F.3d 87, 93 (3d Cir. 2007) (failure to object to a Presentence Report concedes its accuracy). So the facts that Amaya-Vasquez complains of were more likely than not true. And the sentencing judge was free to consider them. There was no error, plain or otherwise.

**B.  This sentence is substantively reasonable**

Amaya-Vasquez also argues that his sentence is unreasonably high. It is not. We review the substance of a sentence for abuse of discretion. *United States v. Woronowicz*, 744 F.3d 848, 851 (3d Cir. 2014). We will not reverse "unless no reasonable sentencing court would have imposed the same sentence." *Id.* at 852.

Amaya-Vasquez gives three reasons for a lower sentence: his anticipated removal at the end of his sentence, his troubled childhood, and his possible dependent personality disorder. To start, he has already been removed and illegally reentered twice, so his anticipated removal does not help him. Removal is an ordinary part of undoing an illegal reentry, one of his crimes. And the sentencing judge considered Amaya-Vasquez's childhood and possible mental illness. But he also considered the heinousness of the crime, Amaya-Vasquez's past actions, and the need for general and specific deterrence. *See* 18 U.S.C. § 3553(a).

These considerations more than justify a twenty-four-year sentence. He kidnapped the victim and their daughter for three days, violently and repeatedly raped the victim, and did so after years of threats and abuse. No wonder the sentencing judge took the time to read aloud the victim's letter and plea "that justice be done." App. 136.

If anything, a higher sentence may well have been warranted. The statutory maximum for kidnapping is life imprisonment. 18 U.S.C. § 1201(a). And Amaya-Vasquez had a criminal history score of one, though he appears to have committed multiple crimes. So the Court was well within its discretion to impose a twenty-four-year sentence for three days of kidnapping, assaults, and rapes that followed years of threats, assaults, and rapes.

We will affirm.