

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2009

# USA v. Lewis

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4058

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Lewis" (2009). *2009 Decisions*. Paper 1347.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1347

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4058
_____

UNITED STATES OF AMERICA,
                                        Appellant
v.

BARRY WAYNE LEWIS


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00024)
District Judge: Honorable Sean J. McLaughlin

_____


Argued September 29, 2008
Before: FISHER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed:May 20, 2009)

Robert L. Eberhardt [Argued]
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Attorney for Appellant*


Thomas W. Patton [Argued]
Office of Federal Public Defender
1001 State Street
1111 Renaissance Centre
Erie, PA 16501-0000
        *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

In this appeal we consider whether a burglary conviction under an Ohio statute in effect in 1991 constitutes a violent felony under the Armed Career Criminal Act (ACCA).

## I.

Barry Wayne Lewis, a convicted felon, was indicted under 18 U.S.C. §§ 922(g)(1) and 924(e), after he was found carrying a rifle in Warren, Pennsylvania. At the time of his arrest, Lewis had three prior felony convictions, including assault with a deadly weapon in California, and abduction and burglary in Ohio. After Lewis pleaded guilty to the firearm charge, the parties disagreed regarding the appropriate sentence. The Government sought a mandatory minimum of 15 years imprisonment, arguing that Lewis's Ohio burglary conviction was his third "violent felony" under ACCA, 18 U.S.C. § 924(e)(1). Lewis argued otherwise and the District Court agreed with him, holding that the Ohio burglary conviction was not a qualifying offense under ACCA. The Government filed this timely appeal and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b).

## II.

At issue is ACCA's "residual clause," which has been the subject of Supreme Court review each of the past three years. *See James v. United States*, 550 U.S. 192 (2007); *Begay v. United States*, 128 S. Ct. 1581 (2008); *Chambers v. United States*, 129 S. Ct. 687 (2009). Pursuant to the residual clause, we must decide whether Lewis's Ohio burglary conviction "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).[1]

A.

We analyze the Ohio statute using a categorical approach, *see United States v. Taylor*, 495 U.S. 575, 602 (1990), which asks "whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James*, 550 U.S. at 202. In applying the categorical approach, a sentencing court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). The categorical approach is necessary to "avoid collateral trial[s] and [retroactive] judicial factfinding" relative to predicate offenses that may have occurred years ago. *United States v. Siegel*, 477 F.3d

---

[1]Although burglary is a specifically enumerated violent felony under ACCA § 924(e)(2)(B), the Government does not argue that Lewis's offense falls under this provision because the Ohio statute implicated here is broader than the "generic" definition of burglary established by *United States v. Taylor*, 495 U.S. 575 (1990).

3

87, 93-94 (3d Cir. 2007). Based on the sources permitted by *Shepard*, a court must decide "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208 (emphasis added). State court decisions interpreting state law inform this decision. *Id.* at 202-06 (discussing Florida courts' interpretations of a Florida statute).[2]

## B.

This case presents a convoluted factual scenario that complicates our categorical assessment. Lewis initially was charged with aggravated burglary under OHIO REV. CODE ANN. § 2911.11 (1993) (Section 11), which stated in pertinent part:

(A)     No person, by force, stealth, or deception, shall trespass in an occupied structure . . . or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense . . . or any felony, when any of the following apply:
. . .

　　(3)     The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

---

[2] In cases involving disjunctive statutes, such as the Ohio statute at issue here, we have recharacterized *Taylor's* categorical approach as a "modified" categorical approach, which signals some degree of factual inquiry into the underlying crime. *See Singh v. Ashcroft*, 383 F.3d 144, 148 (3d Cir. 2004). *See also Joseph v. Attorney General*, 465 F.3d 123, 127 (3d Cir. 2006); *Garcia v. Attorney General*, 462 F.3d 287, 291 (3d Cir. 2006) (both citing *Singh*). *Singh* was decided before *Shepard*, which rendered semantic the distinction between "formal" and "modified" categorical approaches. *Shepard* clarified the scope of documents available to courts in pursuing categorical inquiry in *all* cases, and our modified approach is subsumed within *Shepard's* holding.

4

Lewis did not plead guilty to the original indictment; instead, he pleaded guilty to the lesser offense of burglary under OHIO REV. CODE ANN. § 2911.12 (1993) (Section 12), which stated in pertinent part:

(A)     No person, by force, stealth, or deception, shall do any of the following:

>    (1)     Trespass in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense or any felony.

Lewis's guilty plea to burglary under Section 12(A)(1) was not made pursuant to a superseding indictment; rather, the original indictment for aggravated burglary was altered to reflect the plea deal. Consequently, the plea reflected all of the averments in the original indictment, along with the amendment to the indictment, which substituted burglary under Section 12 for aggravated burglary under Section 11. This created an anomaly because the averments in the indictment sufficed for aggravated burglary, but Lewis pleaded guilty only to burglary.

Both Sections 11 and 12 rely on the definition of "occupied structure" found in OHIO REV. CODE ANN. § 2901.01 (1993):

(C)     "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

>    (1)     It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

>    (2)     At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3)     At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4)     At the time, any person is present or likely to be present in it.

"Occupied structure" is defined partly in terms of "dwellings" and "habitations," a distinction which is significant in our evaluation of the risk of injury posed by Lewis's offense.  Under Ohio law, dwellings and habitations are residential in nature, and a dwelling is a temporarily vacant habitation:  "[a] structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure 'maintained' as a dwelling."  *State v. Davis*, No. 90050, 2008 WL 2688088,  at *8 (Ohio Ct. App. Jun. 5, 2008).  Examples of dwellings include:  (1) a home "whose usual occupant is absent on prolonged vacation [or] receiving long-term care in a nursing home"; (2) "a summer cottage"; and (3) "a residential rental unit which is temporarily vacant."  *State v. Jackson*, No. CA2005-02-033, 2006 WL 589378, at *5 (Ohio Ct. App. Mar. 13, 2006).

Relying on Ohio caselaw interpreting the two burglary statutes, Lewis argues that his conviction cannot be classified as a crime of violence because there was little chance that another person would be present at the time of his burglary.  The Government counters by arguing that our categorical assessment of burglary must ignore the aggravated burglary statute.  The Government cites *United States v. Lane*, 909 F.2d 895

6

(6th Cir. 1990), which held that Ohio burglary qualifies as a violent felony under the residual clause.[3] We find neither party's reasoning entirely correct.

## C.

To categorically assess the risk of physical injury posed by Lewis's offense, we must first determine how broadly to read the statute. *See Chambers*, 129 S. Ct. at 690 ("[The] categorical approach requires courts to choose the right category. And sometimes the choice is not obvious."). The parties agree that Lewis was convicted under subsection (A)(1) of Section 12 and focus their arguments on whether the elements of that particular subsection satisfy ACCA's residual clause. We agree that subsection (A)(1) is our proper focus because Lewis pleaded guilty to a second degree felony and subsection (A)(1) is the only second degree felony contained in Section 12.

In *Chambers*, the Supreme Court applied the categorical approach to a similarly disjunctive statute involving "escape" under Illinois law. Although the charging document identified the particular subsection under which Chambers was convicted, the Supreme Court grouped together four subsections of the statute in its categorical assessment, focusing on "the statutory phrases setting forth various kinds of failure to report (or to return) [to prison]," which "describe[d] roughly similar forms of behavior . . . [and] amount[ed] to variations on a single theme." *Chambers*, 129 S. Ct. at 691. In

---

[3] The Government places much weight on *Lane*, but the Ohio Supreme Court is the final arbiter of Ohio law, and we agree with Lewis that *Lane* misinterpreted the statute's requirements.

7

this case, however, it would be inappropriate to group together multiple subsections under Section 12, because subsections (A)(2) and (A)(3) do not involve degrees of risk comparable to subsection (A)(1).[4] Because the charging document makes clear that Lewis was convicted under Section 12(A)(1), it is proper to focus exclusively on that subsection. Therefore, we will categorically assess the "conduct encompassed by the elements of [Section 12(A)(1)], in the ordinary case." *James*, 550 U.S. at 208. The dispositive question becomes whether trespass by force, stealth, or deception in an occupied structure with purpose to commit a felony or theft ordinarily poses a serious potential risk of physical injury to another.

D.

Having constrained our categorical inquiry to Section 12(A)(1), we next consider the particular elements of the offense. Lewis argues that our categorical assessment of Section 12(A)(1) must be limited to a certain type of "occupied structure." The District Court agreed, finding that Lewis's conduct involved intrusion into a habitation as opposed to a dwelling or other edifice that would qualify as an occupied structure under § 2909.01(C). This assumption is crucial to Lewis's argument that the language of Ohio's two burglary statutes, along with Ohio precedent interpreting them, dictate that there was little chance of anyone being present at the time of his offense. Because it was highly

---

[4] Unlike subsection (A)(1), subsections (A)(2) and (A)(3) necessarily involve both intrusion into a habitation *and* the likely presence of another person. Moreover, each subsection is classified as a felony of a different degree.

unlikely that anyone would be present, Lewis argues, the risk of physical injury arising from his conduct was greatly diminished and his offense does not qualify under ACCA's residual clause.

To determine whether Lewis's burglary necessarily involved intrusion into a habitation, we first consider the Addendum to the Presentence Investigation Report (PSR), which states: "[s]ince no amended indictment is available, the only charging documents available to the Court to determine if the defendant's burglary offense constitutes a predicate offense for ACCA purposes is the original indictment and the February 12, 1991 journal entry" recording Lewis's plea. PSR Addendum 4. That journal entry refers to the original indictment, which charged Lewis with aggravated burglary as follows:

> the defendant, by force, stealth, or deception, trespassed in an occupied structure . . . or in a separately secured or separately occupied portion thereof, with the purpose to commit therein a theft offense . . . or a felony, and the occupied structure involved is [a] permanent or temporary habitation . . . in which, at the time, any person was present or likely to be present.

Appellee's Supp. App. 14.

The journal entry also states that "the prosecution's motion to amend indictment to read 'burglary' is granted." *Id.* at 15. The record demonstrates that the only change made in the amended indictment was replacing aggravated burglary (Section 11) with burglary (Section 12). Finally, the journal entry states that "defendant retracts his/her former plea

9

of not guilty . . . and for plea to said indictment says he/she is guilty of burglary, RC 2911.12, *as charged in the amended indictment*." *Id.* (emphasis added).

Though not a charging document itself, we find that the journal entry is a "comparable judicial record," *Shepard*, 544 U.S. at 26, which serves as a proxy for the amended indictment. *See United States v. Bennett*, 100 F.3d 1105, 1110 (3d Cir. 1996) (holding that in the absence of "charging instruments, jury instructions, or certified records of conviction" for prior offenses, "details of those convictions . . . provided by defense counsel in a letter to [defendant's] probation officer" were sufficient to "satisfy [the court] that the trier of fact necessarily found all of the elements of" the offenses). Accordingly, it was proper for the District Court to rely on the journal entry in assessing the nature of Lewis's conduct. Nevertheless, the anomalous facts of this case require that we not take those documents at face value.

If we were to take the journal entry and indictment at face value, Lewis would be held accountable for both intrusion into a habitation *and* the actual or likely presence of another person in the habitation. This would violate Ohio law, which provides that when both habitation and physical presence are involved, the crime is aggravated burglary under Section 11, not burglary under Section 12. *State v. Wilson*, 388 N.E.2d 745 (Ohio 1979).

In *Wilson*, the Ohio Supreme Court explained that Section 11 required both intrusion into a habitation *and* the likely presence of another person, while either fact

10

alone was sufficient under Section 12(A)(1). To avoid the equal protection problem inherent in punishing identical conduct differently under separate statutes, *Wilson* held that a conviction under Section 12(A)(1) must involve only a habitation or the likely presence of another, not both. *Id.* at 747-50 (reading § 2909.01 disjunctively).[5] The court also avoided a potential due process problem by explicitly rejecting a presumption that intrusion into a habitation necessarily involves the likelihood of presence, stating that "a structure can be one that was occupied as a permanent or temporary habitation without being one . . . where at the time anyone is present or likely to be present." *Id.* at 750. Regardless of the persuasive force of this distinction, we are bound to follow Ohio law on this point. *See James*, 550 U.S. at 202-06.

The District Court noted that since *Wilson*, Ohio courts have interpreted "likely presence" to be "virtually coterminous with the concept of 'potential presence.'" App. 93. *See, e.g., State v. Lockhart*, 685 N.E.2d 564 (Ohio Ct. App. 1996); *Matter of Reed*, No. 67238, 1994 WL 706154 (Ohio Ct. App. Dec. 15, 1994). In light of this extremely broad

---

[5] We clarify that *Wilson's* holding is legal, not factual. "The Equal Protection Clause is not violated when, based upon prosecutorial discretion, a person may be charged under more than one statute and thereby receive different penalties." 388 N.E.2d at 55. Neither equal protection nor *Wilson* prohibits a prosecutor from charging a defendant under the lesser burglary statute simply because the prosecutor believes intrusion into a habitation and likelihood of presence can both be established. Therefore, a burglary offense which *as a matter of fact* involves both elements may be charged under the lesser statute. Nevertheless, *Wilson* illustrates that the statutes at issue define aggravated burglary as a more severe crime than burglary on the basis of a single additional element, and that a defendant convicted only under the lesser offense cannot *as a matter of law* be held responsible for both elements.

interpretation of "likely presence" and the assumption that he intruded into a habitation, Lewis argues that his crime posed a relatively minimal risk of injury because "a burglary conviction [under Section 12(A)(1)] means that the state could not establish that anyone was potentially present at the time of the burglary." Appellee's Br. 31.

Lewis's argument would hold water if the record made clear that his conduct involved intrusion into a habitation, but it does not. As we have noted, the indictment charges Lewis with trespass into an occupied structure that is a permanent or temporary habitation in which one was present, or likely to be present. Because Lewis did not plead guilty to aggravated burglary under Section 11, however, we cannot hold him liable for both charges in the indictment. Rather, we will proceed to consider the other documents permissible under *Shepard*, and "any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.

At Lewis's two sentencing hearings, the District Court presumed that Lewis broke into a habitation. This assumption was apparently based on the PSR, which described the facts of Lewis's offense as follows:

> Upon arriving on the scene, the police found Allen Kvatt in the apartment which belonged to Edelbert Cross. A neighbor of Mr. Cross informed the police that Mr. Cross had been taken to the hospital a day previously for a leg and foot infection, and shortly thereafter, Mr. Kvatt, who was in the apartment at that time, and another male, later identified as [Lewis], had illegally entered the apartment and had been there ever since. Mr. Kvatt informed the police that he and [Lewis] had broken into the apartment the previous day

PSR at ¶ 34.

12

The foregoing averments are relevant to our categorical inquiry because we have held that the PSR is a permissible *Shepard* document to the extent that the defendant concedes facts stated therein. *Siegel*, 477 F.3d at 93-94. Thus, we consider the fact that Lewis broke into an apartment while the occupant was hospitalized. But this begs the question whether the circumstances of the occupant's hospitalization were sufficient to render the apartment a dwelling under Ohio law. Lewis now assents to the District Court's conclusion that the apartment was a habitation because it necessarily follows that there was no likelihood of anyone being present under *Wilson*. But *Wilson* applies only to habitations, and nothing in the PSR indicates whether the apartment Lewis burglarized was a habitation or a dwelling. If Mr. Cross's temporarily vacant apartment were a dwelling, then *Wilson* would not preclude Lewis's offense from involving a likelihood of presence.

Ohio precedent on the distinction between habitation and dwelling is sparse. We have not found, and the parties do not cite, any cases defining precisely how long an occupant must be gone to transform a habitation into a dwelling. Nor is it apparent whether the distinction is based on the expected or actual length of the absence, or if Mr. Cross's hospitalization was the type of absence that qualifies. Given this ambiguity, the *Shepard* documents are insufficient for us to draw a conclusion on this point. We would have to dig well beneath the available documents and engage in judicial factfinding

13

contrary to S*hepard* and *Siegel*, to determine whether the circumstances of Mr. Cross's hospitalization rendered the apartment a dwelling.

In sum, Lewis's amended indictment avers element A *and* element B for an offense that by its terms encompasses only one element or the other. We must assume that Lewis's conduct involved either intrusion into a habitation or the likely presence of another person (and not both), but the categorical approach requires that we make no assumption about which it was at this point.

E.

Although we decline to narrow the scope of our inquiry strictly to violations of Section 12(A)(1) involving habitations, the foregoing *Shepard* documents and Ohio precedent do allow us to narrow the inquiry somewhat. On its face, Section 12(A)(1) encompasses intrusions into any occupied structure. By definition, this includes: (1) habitations, whether or not there is a likelihood of presence; (2) dwellings, whether or not there is a likelihood of presence; (3) structures specially adapted for overnight accommodation, whether or not there is a likelihood of presence; and (4) any other structure, only if there is a likelihood of presence. § 2909.01(C). Excluding certain of these instances from the scope of our inquiry may affect our categorical assessment, because likelihood of presence bears on the risk of physical injury posed by the offense. We find it proper to narrow the scope of our inquiry under Section 12(A)(1) in two respects.

14

First, *Wilson* makes clear that an intrusion into a habitation must be *aggravated* burglary if it involves the likelihood of presence. Therefore, Section 12(A)(1) only encompasses intrusions into habitations that do *not* involve presence. The Government objects that *Wilson* is irrelevant insofar as it relies on Section 11, and any consideration thereof is an impermissible excursion beyond the categorical approach. This argument misconstrues *Taylor's* categorical mandate. Statutory provisions do not exist in a vacuum, divorced from their overarching legislative schemes; they must be read as a whole and in context. *See FDA v. Brown & Williamson Tobacco Co.*, 529 U.S. 120, 132-33 (2000); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). Accordingly, we decline the Government's invitation to analyze Section 12 as if Section 11 did not exist. We also defer to Ohio precedent interpreting "likelihood of presence" just as the Supreme Court deferred to Florida precedent interpreting the terms "curtilage" and "attempt" in *James*. 550 U.S. at 203 ("But while the statutory language is broad, the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary, requiring an 'overt act directed toward entering or remaining in a structure or conveyance.'"); *id.* at 213 ("The Florida Supreme Court has construed curtilage narrowly, requiring 'some form of an enclosure in order for the area surrounding a residence to be considered part of the 'curtilage' as referred to in the burglary statute.'").

Second, the PSR makes clear that Lewis's offense involved either a habitation or a dwelling, so the categorical inquiry must exclude other structures. Therefore, our inquiry

15

is limited to violations of Section 12(A)(1) involving: (1) habitations, only if there is no likelihood of presence; and (2) dwellings, whether or not there is a likelihood of presence.

## III.

Having defined the scope of our inquiry, we must assess the risk of physical injury posed by the foregoing conduct in the "ordinary case." The categorical approach requires us to make a highly abstract, somewhat speculative determination in this regard. In *United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007), the Court of Appeals for the Seventh Circuit was required to make this type of generalized assessment about the risk of physical injury posed by walkaway escapes. The court noted that "it is an embarrassment to the law when judges base decisions of consequence on conjectures, in this case a conjecture as to the possible danger of physical injury posed by criminals who fail to show up to begin serving their sentences or fail to return from furloughs or to halfway houses." *Chambers*, 473 F.3d at 726. When *Chambers* reached the Supreme Court, some justices acknowledged these concerns. *See Chambers*, 129 S. Ct. at 694 (Alito, J., concurring) ("I write separately . . . to emphasize that only Congress can rescue the federal courts from the mire into which ACCA's draftsmanship and *Taylor's* 'categorical approach' have pushed us."). *See also Begay*, 128 S. Ct. at 1592 (Alito, J., dissenting) (noting that ACCA's residual clause "calls out for legislative clarification").

Whatever the merits of the aforementioned observations, ACCA nevertheless requires us to make such judgments given the limited tools at our disposal. In

16

categorically assessing the risk of physical injury posed by Section 12(A)(1), our judgments and assumptions are similar to those made by the Supreme Court in *James*:

> Indeed, the risk posed by an attempted burglary that can serve as the basis for an ACCA enhancement may be even greater than that posed by a typical completed burglary. All burglaries begin as attempted burglaries. But ACCA only concerns that subset of attempted burglaries where the offender has been apprehended, prosecuted, and convicted. This will typically occur when the attempt is thwarted by some outside intervenor – be it a property owner or law enforcement officer. Many completed burglaries do not involve such confrontations. But attempted burglaries often do; indeed, it is often just such outside intervention that prevents the attempt from ripening into completion.

550 U.S. at 204. *Cf. Chambers*, 129 S. Ct. at 692 (in rejecting government's argument that walkaway escape should be considered a crime of violence, reasoning that "an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct"). We turn, finally, to this analysis.

A.

It is important to note at the outset that the "ordinary case" of Lewis's conduct must involve habitations as opposed to dwellings. Of the 110 Ohio cases during the relevant time frame (1991-1995) that reference Section 12 burglary, only one involves a dwelling. In that case, the defendant broke into the vacant portion of a duplex while the occupant was in jail. *State v. McLemore*, No. 95CA006037, 1995 Ohio App. LEXIS 3815 (Ohio Ct. App. Aug. 30, 1995). The overwhelming majority of cases involve

17

intrusions into habitations.[6]  *Cf. United States v. Mayer*, 560 F.3d 948, 961-62 (9th Cir. 2009) (assessing ordinary case of Oregon burglary offense based on review of state court decisions applying the statute).  This is intuitive, given that Ohio law defines dwellings as an extremely narrow subset of habitations.  *See* Section II.B, *supra*.  Because the ordinary case involves habitations, and intrusions into habitations involving likelihood of presence are excluded from our inquiry by *Wilson*, the ultimate issue becomes whether trespass by force, stealth, or deception into a habitation with purpose to commit a felony or theft ordinarily poses a serious potential risk of physical injury to another, *when there is no likelihood of presence*.

## B.

By definition, crimes involving no chance of another person being present seem to pose no risk of physical injury.  However, the Supreme Court has stated that the risk of injury associated with burglary arises not necessarily from confrontation by an occupant, but also from confrontation by "a police officer, or a bystander who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress."  *James*, 550 U.S. at 203.  The Government notes that the language of the Ohio statute is limited to the actual or likely presence of someone inside the structure, *see* § 2909.01(C)(4) ("At the time, any

---

[6] A few cases involve intrusions into other structures such as businesses or motel rooms, but these structures are excluded from our inquiry for the reasons we explained in Section II.E, *supra*.

person is present or likely to be present in it."), and argues that even if Lewis's conduct involved no likelihood of "presence" under Ohio law, the risk of harm posed by confrontations with non-occupants alone is sufficient to satisfy the residual clause.

But contrary to the Government's reading of "presence in a structure," Ohio courts have read this element broadly. *See* Section II.D, *supra*. *See also State v. Green*, 480 N.E.2d 1128, 1132 (Ohio Ct. App. 1984) ("A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person *could* be present.") (emphasis added); *State v. Kilby*, 361 N.E.2d 1336, 1339 (Ohio 1977); *State v. Tippie*, No. 91-CA-1511, 1993 WL 148775 (Ohio Ct. App. May 3, 1993); *State v. Williams*, No. C-800141, 1981 WL 9663 (Ohio Ct. App. Mar. 4, 1981). Under the Ohio statute, burglary involves no likelihood of presence only if committed at a time when the occupants are normally absent for a reason like work or school, and no one else has any reason to be there. *See, e.g., State v. McCoy*, No. 07AP-769, 2008 Ohio App. LEXIS 2781, at *12 (Ohio Ct. App. Jun. 30, 2008); *State v. Blackmon*, No. 15099, 1992 WL 2945, at *5 (Ohio Ct. App. Jan. 2, 1992). Although the Government challenges this characterization of Ohio law, it does not refute the reasoning behind these cases or offer any authority to the contrary. *See* Appellant's Br. 23 (stating without support that "the likely presence concept of [Ohio's] aggravated burglary offense . . . is limited to occupants"). Because the offense is narrowly defined to exclude situations with the

greatest potential for confrontation, Ohio burglary involving no likelihood of presence poses less risk of physical injury than typical burglary.

In sum, Lewis's offense by definition involves very little chance of confrontation by occupants, neighbors, or relatives. The possibility of being confronted by the police still creates some minute risk of physical injury, but the risk is greatly diminished compared to the risk posed by the conduct at issue in *James*, and to Ohio burglary involving likelihood of presence. *Cf. Mayer*, 560 F.3d at 963 (holding that Oregon burglary offense poses serious potential risk of injury only with respect to occupants and those in the "immediate area of a building if a confrontation does occur"). Although we can imagine a violation of Section 12(A)(1) that does not involve likelihood of presence but nevertheless results in a violent confrontation with a police officer or passerby, "ACCA does not require metaphysical certainty. Rather, [the residual clause] speaks in terms of a 'potential risk.' These are inherently probabilistic concepts." *James*, 550 U.S. at 207. "Our inquiry is *not* whether 'every conceivable factual offense covered by a statute' presents a serious potential risk of physical injury, but rather whether, 'in the ordinary case' conduct falling within the state statute presents such a risk." *Mayer*, 560 F.3d at 960 (quoting *James*, 550 U.S. at 208) (emphasis in original). Therefore, despite the possibility that an innocent person could stumble upon the scene of a Section 12(A)(1) burglary when an occupant is not likely to be present, that possibility is too remote to give

rise to a "serious potential risk of physical injury to another" in the typical case. § 924(e)(2)(B)(ii).

Under the categorical approach, the ordinary case of Lewis's offense involves intrusion into a habitation with no likelihood of presence. Absent the likely presence of another, we hold that the risk of physical injury posed by conduct violative of Section 12(A)(1) is too diminished to satisfy ACCA's residual clause. Accordingly, we will affirm the judgment of the District Court.