RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TRACY A. GREER,

>    *Petitioner-Appellant,*

         *v.*

>    No. 16-4755

UNITED STATES OF AMERICA,

>    *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 1:06-cr-00559-1; 1:16-cv-01185—James S. Gwin, District Judge.

Argued:  May 3, 2019

Decided and Filed:  September 12, 2019

Before:  GUY, CLAY, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Claire R. Cahoon, FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant.
Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.
**ON BRIEF:**  Claire R. Cahoon, FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant.
Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

GRIFFIN, Circuit Judge.

The only issue in this appeal is whether the crime of aggravated burglary, as defined by two now-repealed Ohio statutes, qualifies as generic burglary under the enumerated-offense

clause of the Armed Career Criminal Act ("ACCA") in light of recent Supreme Court guidance. *See, e.g.*, *United States v. Stitt*, 139 S. Ct. 399 (2018). The district court held that petitioner Tracy Greer's aggravated burglary convictions qualified as "violent felonies" under the ACCA's enumerated-offense clause and denied Greer's petition. We agree and affirm.

## I.

The ACCA imposes a mandatory minimum sentence of fifteen years for a conviction under 18 U.S.C. § 922(g) if the defendant has three or more previous convictions for either "violent felon[ies]" or "serious drug offense[s]" (or both). 18 U.S.C. § 924(e)(1). In 2007, Greer pleaded guilty, pursuant to a plea agreement, to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (along with thirteen counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) and one count of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)). In the plea agreement, the parties agreed that Greer was "punishable as an Armed Career Criminal" given his five prior convictions for aggravated burglary under Ohio law. The district court agreed and sentenced Greer to 272 months of imprisonment, comprised of 188 months for the § 2113 and § 922(g)(1) counts, to be served concurrently, and an additional 84 months for the § 924(c) count, to be served consecutively.

After the Supreme Court invalidated what was commonly referred to as the ACCA's "residual clause," *see Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015), and made that decision retroactive to cases on collateral review, *see Welch v. United States*, 136 S. Ct. 1257, 1261 (2016), Greer timely moved to vacate his sentence under 28 U.S.C. § 2255. The district court denied Greer's motion and held that his prior aggravated burglary convictions qualified as ACCA predicates under the ACCA's enumerated-offense clause—the first portion of 18 U.S.C. § 924(e)(2)(B)(ii)—which remained good law after *Johnson*. *Greer v. United States*, No. 1:06-CR-559, 2016 WL 7387103, at *1 (N.D. Ohio Dec. 21, 2016). But the court granted a certificate of appealability on this issue and authorized Greer to file an appeal. *Id.* at *5; *see* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). He did so.

While Greer's appeal was pending, we decided *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc), and held that Tennessee's aggravated burglary statute was not a "violent felony" under the ACCA because its definition of "habitation" had a broader scope than the enumerated offense of generic burglary under 18 U.S.C. § 924(e)(2)(B)(ii). The government then conceded that Greer was not properly classified as an armed career criminal given the similarity in language between the Tennessee statute in *Stitt* and the Ohio statute under which Greer sustained his prior convictions. But the government reserved the right to withdraw its concession if the Supreme Court decided the issue differently. The government filed for certiorari in *Stitt*, and when the Court granted it, the government moved to hold this case in abeyance pending the Supreme Court's decision. We granted that motion. After the Supreme Court reversed the en banc decision of this court, *see Stitt*, 139 S. Ct. 399, we lifted the stay.

## II.

"In reviewing the denial of a 28 U.S.C. § 2255 motion, we apply a de novo standard of review to the legal issues and uphold the factual findings of the district court unless they are clearly erroneous." *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009) (citation omitted). Whether Greer qualifies as an armed career criminal is a legal determination that we review de novo. *Raines v. United States*, 898 F.3d 680, 686 (6th Cir. 2018) (per curiam) (citation omitted).

## III.

As a preliminary matter, the government argues that Greer has waived his ACCA argument for two reasons. First, in the plea agreement, Greer stipulated that he was "punishable as an Armed Career Criminal." Second, the plea agreement included an appellate waiver, which limited Greer's right to file both a direct appeal and a collateral attack on his conviction or sentence. While the appellate waiver contained an exception allowing Greer "to appeal any punishment in excess of the statutory maximum," the government argues that the waiver should apply here because that exception covers direct appeals, not collateral attacks. The government argues that each of these two concessions constitutes the "intentional relinquishment or

abandonment of a known right" and urges us to reject Greer's appeal as waived. *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

But the government's arguments are undercut by a potent bit of irony. Typically, this court reviews only those issues adequately preserved for appeal. When a party neglects to advance a particular issue in the lower court, we consider that issue forfeited on appeal. *United States v. Archibald*, 589 F.3d 289, 295–96 (6th Cir. 2009). And, "as with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion." *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998) (citation omitted); *see also Olano*, 507 U.S. at 733–34 (clarifying the distinction between waiver and forfeiture). For whatever reason, the government decided not to pursue either of its waiver arguments before the district court. Thus, it has forfeited them on appeal.

The government points out that our forfeiture rule is not inflexible, and that we have the power to excuse its forfeiture here. *See Cradler v. United States*, 891 F.3d 659, 666 (6th Cir. 2018). But we typically do so only in "exceptional cases," and the government offers no compelling reasons to justify departing from our usual practice. *Id.* (quoting *Wood v. Milyard*, 566 U.S. 463, 473 (2012)); *see Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677–78 (6th Cir. 2018). In fact, the government's position is particularly brazen here; the government asks us to excuse its forfeiture, then turn around and enforce Greer's waivers to dispose of this appeal. We decline to do so. After all, "[o]ur function is to review the case presented to the district court, rather than a better case fashioned" later on appeal. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) (citation omitted). We therefore proceed to the merits.

## IV.

The government argues that Greer's convictions fall within the enumerated offense of "burglary" under 18 U.S.C. § 924(e)(2)(B)(ii). To determine whether a past conviction qualifies as burglary under the ACCA, we employ the "categorical approach" and "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254,

257 (2013). Greer's prior convictions qualify as ACCA predicates "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.*

"[T]he contemporary understanding of 'burglary' has diverged a long way from its commonlaw roots." *Taylor v. United States*, 495 U.S. 575, 593 (1990). So the proper setting for examining the contours of generic burglary is not its understanding at common law, but rather its understanding at the time the ACCA was passed, as evidenced in the criminal codes of the states. *Id.* at 598. Using this approach, the Court concluded that "the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.*

All of Greer's previous convictions were for aggravated burglary under Ohio law. *See* Ohio Rev. Code Ann. §§ 2911.11(A), 2909.01 (1973). In 1996, Ohio Senate Bill 2 "significantly modified Ohio's criminal code," including the statute of Greer's convictions. *Kiser v. Mohr*, No. 2:16-CV-0422, 2016 WL 4227396, at *1 n.1 (S.D. Ohio Aug. 11, 2016). Courts commonly keep track of this change by referring to the old version of the code as "Pre-Senate Bill 2" and the current version as "Post-Senate Bill 2." *See, e.g.*, *United States v. Johnson*, 708 F. App'x 245, 247–48 (6th Cir. 2017). Greer's convictions occurred in the early 1980s, under the Pre-Senate Bill 2 version of Ohio Revised Code § 2911.11(A).[1] It provided:

> No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
>
>> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>>
>> (2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;
>>
>> (3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

---

[1]These convictions also occurred before a minor amendment to § 2911.11 went into effect in 1985. It added a single word to subsection (B) and did not change any elements of aggravated burglary.

Ohio Rev. Code Ann. § 2911.11(A) (1973). The parties agree that all of Greer's previous convictions qualified as aggravated burglary under § 2911.11(A)(3).[2]

Section 2909.01 defined "occupied structure" as follows:

An "occupied structure" is any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;

(B) Which at the time is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;

(C) Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present;

(D) In which at the time any person is present or likely to be present.

Ohio Rev. Code Ann. § 2909.01 (1973). The relevant definition of aggravated burglary "is a combination of two of the definitions of 'occupied structure' found in R.C. 2909.01(B) and (D)." *State v. Wilson*, 388 N.E.2d 745, 749 (Ohio 1979).

Greer argues that § 2911.11(A)(3) criminalizes a broader swath of conduct than generic burglary. Specifically, he stresses that *Taylor* limited generic burglary to unlawful entry into a "building or other structure," 495 U.S. at 598, but that § 2909.01's definition of "occupied structure" includes "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof." Because a vehicle, for example, is not a "building or other structure," Greer contends that the Pre-Senate Bill 2 version of § 2911.11(A)(3) is too broad to qualify as an ACCA predicate. As set forth below, we disagree.

---

[2]Greer appears to concede that the statute is divisible, and its structure and language indicate that it is. *See Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016); *Shepard v. United States*, 544 U.S. 13 (2005). Therefore, we need not employ the modified categorical approach or evaluate subsections (1) and (2).

A.

Our analysis begins with the Supreme Court's decision in *Stitt*, 139 S. Ct. 399.[3]  The question presented in that case was "whether the statutory term 'burglary' includes burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodation." *Id.* at 403–04.  In consolidated appeals, the Court considered Arkansas' and Tennessee's burglary statutes.  The Tennessee statute

> defines "[a]ggravated burglary" as "burglary of a habitation."  Tenn. Code Ann. § 39-14-403(a) (1997).  It further defines "[h]abitation" to include: (1) "any structure, including . . . mobile homes, trailers, and tents, which is *designed or adapted for the overnight accommodation of persons,*" and (2) any "self-propelled vehicle that is *designed or adapted for the overnight accommodation of persons* and is actually occupied at the time of initial entry by the defendant."  §§ 39-14-401(1)(A), (B) (emphasis added).

*Id.* at 404.  Meanwhile, Arkansas "prohibits burglary of a 'residential occupiable structure.'" *Id.* (quoting Ark. Code Ann. § 5-39-201(a)(1) (Michie 1997)).  That term encompasses "a vehicle, building, or other structure . . . [w]here any person lives" or "[w]hich is *customarily used for overnight accommodation* of persons whether or not a person is actually present." *Id.* (quoting Ark. Code Ann. § 5-39-101(1)).

The Supreme Court held that the language of these statutes fell "within the scope of generic burglary's definition as set forth in *Taylor*." *Id.* at 406.  First, the Court reviewed the scope of states' burglary statues in 1986, when the current version of the ACCA was enacted, and found that "a majority of state burglary statutes covered vehicles adapted or customarily used for lodging—either explicitly or by defining 'building' or 'structure' to include those vehicles."[4]  *Id.*  Second, the Court noted that Congress included burglary in the ACCA's definition of "violent felony" because burglary creates the risk of violence between the

---

[3]This court has previously considered Ohio's burglary regime in this setting a few different times, but has never squarely answered the question presented in this appeal. *See, e.g.*, *United States v. Lane*, 909 F.2d 895, 902 (6th Cir. 1990) (noting in dicta that Ohio's simple burglary statute is "broader than the Supreme Court's generic definition of burglary" because it "includes places other than buildings").  And every relevant case Greer cites predates *Stitt*, which clarified the scope of generic burglary and abrogated several decisions of this court. *E.g.*, *United States v. Coleman*, 655 F.3d 480, 482 (6th Cir. 2011).

[4]An appendix to the opinion listed the 1982 versions of Ohio Revised Code §§ 2909.01, 2911.11, and 2911.12 as comprising one such state burglary regime. *Stitt*, 139 S. Ct. at 408.

perpetrator and an occupant of the burgled location. *Id.* The Court explained that "[a]n offender who breaks into a mobile home, an RV, a camping tent, a vehicle, or another structure that is adapted for or customarily used for lodging runs a similar or greater risk of violent confrontation." *Id.*

*Stitt* requires the conclusion that § 2909.01's "overnight accommodation" language does not render § 2911.11(A)(3) broader than generic burglary. The Pre-Senate Bill 2 version of Ohio's aggravated burglary statute covers burglary of a "vehicle" that is "specially adapted for the overnight accommodation of any person, whether or not any person is actually present." Ohio Rev. Code Ann. § 2909.01(C) (1973). This language is notably similar to the provisions in the Tennessee and Arkansas statutes examined in *Stitt*. *See* Tenn. Code Ann. § 39-14-401(1)(A)–(B) (covering mobile homes, trailers, and self-propelled vehicles that are "designed or adapted for the overnight accommodation of persons"); Ark. Code Ann. § 5-39-101(1) (covering vehicles that are "customarily used for overnight accommodation of persons whether or not a person is actually present"). Additionally, the Committee Comment to § 2909.01 makes clear that subsection (C)'s definition of "occupied structure" includes, among other things, "[t]he tent camper rigged for an overnight stay," though it "would not come under the definition when collapsed for travel." Ohio Rev. Code Ann. § 2909.01 comm. cmt. (1973).

### B.

The Supreme Court's holding in *Stitt* does not end the inquiry here, however, because § 2911.11(A)(3)'s scope is not limited to only those vehicles that "ha[ve] been adapted or . . . customarily used for overnight accommodation." 139 S. Ct. at 403–04. Instead, § 2909.01's requirement that an "occupied structure" be "specially adapted for the overnight accommodation of any person," appears as one of four alternative definitions of that term. *See* Ohio Rev. Code Ann. § 2909.01(C) (1973). The Arkansas statute in *Stitt* similarly covered, as an alternative to its "overnight accommodation" language, "burglary of 'a vehicle . . . [i]n which any person lives.'" 139 S. Ct. at 407 (quoting Ark. Code Ann. § 5-39-201(a)(1)). The Arkansas defendant argued that the vehicle provision in Arkansas' burglary statute constituted an independent reason for why that statute reached beyond the scope of generic burglary and opined that "these words might cover a car in which a homeless person occasionally sleeps." *Id.* Because this argument

rested partially on state law and had not been considered by the lower courts, the Supreme Court remanded the Arkansas case for further proceedings.[5] *Id.*

Further analysis beyond *Stitt*'s core holding is necessary here, too. "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (internal quotation marks and alterations omitted). But "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Id.* at 191 (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The government argues that the "habitation" and "presence" requirements, while different from the language considered in *Stitt*, have the same effect of narrowing Ohio Revised Code § 2911.11(A)(3)'s scope to make it fall within the definition of generic burglary.

We must look to state law to ascertain the meaning of these terms. "[S]tate courts are the final authority on the meaning of state law." *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003) (citation omitted). In interpreting an Ohio statute, we first examine its language to determine legislative intent. *Provident Bank v. Wood*, 304 N.E.2d 378, 381 (Ohio 1973). "[C]ourts must give the words used in statutes their plain and ordinary meaning, unless legislative intent indicates otherwise." *Coventry Towers, Inc. v. City of Strongsville*, 480 N.E.2d 412, 414 (Ohio 1985) (citation omitted). Also, "our attention should be directed beyond single phrases, and we should consider, in proper context, all words used by the General Assembly in drafting [the relevant statute] with a view to its place in the overall statutory scheme." *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 773 N.E.2d 536, 541 (Ohio 2002).

---

[5]On remand, the Eighth Circuit held that the Arkansas statute fell within the scope of generic burglary and affirmed the defendant's ACCA-enhanced sentence. *United States v. Sims*, — F.3d —, 2019 WL 3789294 (8th Cir. 2019).

1.

"[H]abitation" "is not a word with special or technical meaning" and it "is not defined in the Revised Code or by case law." *State v. Snyder*, 947 N.E.2d 1281, 1284 (Ohio Ct. App. 2011). "When words in a statute are not defined, they are to be 'construed according to the rules of grammar and common usage.'" *Id.* (quoting Ohio Rev. Code Ann. § 1.42 (1971)). The Ohio Court of Appeals has used Black's Law Dictionary's definition of habitation as "[a] dwelling place; a domicile." *Id.* (quoting *Black's Law Dictionary* 724 (8th ed. 2004)). This approach is consistent with § 1.42, which was in place when the Pre-Senate Bill 2 versions of §§ 2909.01 and 2911.11 were enacted. Thus, in order to give effect to the term "as generally used and commonly understood at the time," *Kasch v. Joeckel*, 165 N.E. 366, 367 (Ohio Ct. App. 1929), we look to the fourth revised edition of Black's Law Dictionary, which defined "habitation" "[i]n its generic sense" as "a place of abode," *Black's Law Dictionary* 839 (Rev. 4th ed. 1968). *See also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 511 (2010) (endorsing an approach that "is consistent with the common, near-contemporary definition" of a key term). Definitions of "abode" included "one's home; habitation; place of dwelling; or residence. Ordinarily means 'domicile.'" *Black's Law Dictionary* 20 (Rev. 4th ed. 1968).

We can also find guidance from the statutes themselves on the meaning of "habitation" and how it relates to other terms. We know that its scope is narrower than "occupied structure" because § 2911.11(A)(3) limits aggravated burglary to cover occupied structures that are also habitations. Also, § 2909.01 includes "habitation" in one of four alternative definitions of "occupied structure." § 2909.01(B). Meanwhile "dwelling" appears in a different definition of occupied structure, § 2909.01(A), and the Committee Comment provides that "all dwellings are classed as occupied structures," § 2909.01 comm. cmt. The Committee Comment also tells us that subsection (B) "class[es] as occupied any structure which is actually being used as a dwelling, even though it is not maintained as such." *Id.*

The relationship between the words "dwelling" and "habitation" is a bit more difficult to figure out. In *United States v. Lewis*, the Third Circuit analyzed Ohio's Pre-Senate Bill 2 burglary statutes in the context of a residual clause analysis complicated by procedural quirks. 330 F. App'x 353, 357 (3d Cir. 2009). In that case, the court held that the defendant's conviction

for simple burglary under § 2911.12 satisfied neither the residual clause nor the enumerated offense clause (the government did not argue against the latter). *Id.* at 356 n.1, 364. Noting that "Ohio precedent on the distinction between habitation and dwelling is sparse," the court opined that "a dwelling is a temporarily vacant habitation." *Id.* at 357 (citing *State v. Davis*, No. 90050, 2008 WL 2688088, at *8 (Ohio Ct. App. Jun. 5, 2008)). *But cf.* § 2909.01 comm. cmt. ("Division (B) complements division (A) by classing as occupied any structure which is actually being used as a dwelling, even though it is not maintained as such."). Thus, "Ohio law defines dwellings as an extremely narrow subset of habitations." *Id.*

These definitions of habitation focus on a structure's status as a place where a person lives rather than that structure's specific physical attributes. The burglary statutes provide an exhaustive list of places that qualify as "occupied structures" (like watercraft and railroad cars) in § 2909.01, while narrowing the scope of occupied structures that are covered under aggravated burglary to "habitations" in § 2911.11(A)(3). Section 2911.11(A)(3) also describes the "habitation" as being "of any person," while the Committee Comment to § 2911.11 describes subsection (A)(3) as covering burglary "when the structure involved is someone's home." § 2911.11 comm. cmt.

State court precedent supports this interpretation. The Ohio Court of Appeals has confirmed that "the distinction between aggravated burglary and burglary . . . turns not on the character of the habitation, but rather upon the existence of one or more of the distinguishing elements set forth in paragraphs (A)(1), (A)(2) and (A)(3) of R.C. 2911.11," including "the likely presence at the time of persons in the building." *State v. Durham*, 360 N.E.2d 743, 749 (Ohio Ct. App. 1976). The court has also equated the "permanent or temporary habitation" language with the word "home." *State v. Veal*, 355 N.E.2d 521, 524 (Ohio Ct. App. 1975). Because the term "habitation" focuses on use, not physical attributes, it does not limit the scope of § 2911.11(A)(3) to exclude "a car in which a homeless person occasionally sleeps." *Stitt*, 139 S. Ct. at 407.

2.

Section 2911.11(A)(3) also requires that, at the time of the burglary, a person be either "present" or "likely to be present." This constitutes a separate requirement from the "habitation" language, as "[a] structure can be one that was occupied as a permanent or temporary habitation without being one under R.C. 2909.01(D), where at the time anyone is present or likely to be present. The converse is also true."**6** *Wilson*, 388 N.E.2d at 750. While actual presence is a straightforward concept, "likely" presence is less so. "Although the term 'likely' connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty." *State v. Green*, 480 N.E.2d 1128, 1132 (1984) (citation omitted); *see Lewis*, 330 F. App'x at 360 ("Ohio courts have interpreted likely presence to be virtually coterminous with the concept of potential presence." (internal quotation marks omitted)). So "[a] person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present." *Green*, 480 N.E.2d at 1130 (citation and emphasis omitted).

While this is a broad interpretation, Ohio courts have made clear that the presence requirement in § 2911.11(A)(3) has teeth. "Numerous Ohio appellate courts have reversed burglary convictions that involved temporarily absent occupants (usually for employment) [when] the prosecution adduced no evidence to show that their work schedules made it likely that they could be at the residence when the break-in occurred." *State v. Jackson*, 937 N.E.2d 120, 123 (Ohio Ct. App. 2010) (collecting cases). The presence requirement is highly fact-intensive and is likely to turn on the unique circumstances in a given case. *See, e.g., State v. Kilby*, 361 N.E.2d 1336, 1337 (Ohio 1977) ("Where the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence to support a charge of aggravated burglary under R.C. 2911.11."); *Jackson*, 937 N.E.2d at 123 ("[W]hen an occupant is absent for extended

---

**6**"For example, a vacant house which is being repaired at the time by an artisan would comply with the essential requirements for a charge of burglary, but not aggravated burglary." *State v. Wilson*, 397 N.E.2d 1206, 1211 (Ohio Ct. App. 1978). In this hypothetical, a person is "present or likely to be present," but the structure is not at the time being used as a "habitation."

periods of time, a person may still be 'likely to be present' under the statute if the occupant gave a key to a neighbor or to someone else and asked them to check on the property."); *State v. Tippie*, No. 91 CA 1511, 1993 WL 148775, at *8 (Ohio Ct. App. May 3, 1993).

The biggest difference between the habitation and presence requirements is that "presence" is even more fleeting than use as a "habitation."  The former can change depending on the time of day.  Thus, the "present or likely to be present" language in the statute provides a concrete limitation separate from the limited scope of the word "habitation" when compared to "occupied structure."

## C.

We now turn to the framework for determining whether § 2911.11(A)(3) qualifies as generic burglary for ACCA purposes.

### 1.

Three Supreme Court decisions provide us with two helpful pieces of guidance.  First, we know that a burglary statute is broader than generic burglary if it (1) covers a multitude of location types, including vehicles, and (2) does not limit its coverage to even remotely residential uses.  *See Stitt*, 139 S. Ct. at 407; *Mathis*, 136 S. Ct. at 2250; *Taylor*, 495 U.S. at 599.[7]  Second, we know that a burglary statute that covers vehicles that have been "adapted or . . . customarily used for overnight accommodation" is not broader than generic burglary (at least, not for that reason).  *Stitt*, 139 S. Ct. at 407.

Ohio Revised Code § 2911.11(A)(3) has attributes of both.  It broadly covers vehicles, railroad cars, trucks, trailers, tents, and other nontraditional locations, but at the same time restricts its scope to those locations that are "habitation[s] of any person, in which at the time any person is present or likely to be present."  Ohio Rev. Code Ann. § 2911.11(A)(3) (1973).  As

---

[7]Greer points out that the statutes in those cases, like the relevant statute here, use the word "any."  Ohio Rev. Code Ann. § 2909.01 (1973).  According to Greer, this means that it too "encompasses those places [listed in the statute] while being used for all purposes – business or residential."  But § 2911.11(A)(3) limits aggravated burglary to cover only structures that are "the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."  In this way, it would not cover "railroad cars . . . filled with cargo, not people," like those statutes would.  *Stitt*, 139 S. Ct. at 407.

discussed above, state law makes clear that both of these attributes are highly fact-specific and dependent upon actual use and presence of a person, unlike the static attributes of physical adaptation and customary use that *Stitt* considered.

Examining the rationale behind the distinctions made by the Supreme Court provides a bit more guidance. *Stitt* explained that by "restricting [their] coverage . . . to vehicles or structures customarily used or adapted for overnight accommodation," the Tennessee and Arkansas statutes "more clearly focus upon circumstances where burglary is likely to present a serious risk of violence" compared to the statutes at issue in *Taylor* and *Mathis*. *Stitt*, 139 S. Ct. at 407. Section 2911.11(A)(3) does the same thing, but by different—and arguably more direct—means. The district court explained that § 2911.11(A)(3)'s focus on likely or actual presence goes to the core of the generic offense of burglary:

> It would be nonsensical to conclude that the most traditional and well-understood form of burglary—entry into an occupied location with the intent to commit a crime inside—was now excluded merely because the occupied location was not a building. Indeed, in *Taylor*, the Supreme Court repeatedly pointed out Congress's intent to punish repeat burglary offenders because of burglary's "inherent potential for harm to persons," when a dwelling was invaded. The Court's use of "building or other structure" does not exclude burglary of a dwelling or occupied location from the generic definition.

*Greer*, 2016 WL 7387103, at *3 (footnotes omitted). By focusing on "circumstances where burglary is likely to present a serious risk of violence," this reasoning is consistent with the Supreme Court's discussion of generic burglary in *Stitt*. 139 S. Ct. at 407. Nothing heightens the risk of violence more than the actual presence of persons inside the burgled structure. By extending only to habitations "in which at the time any person is present or likely to be present," § 2911.11(A)(3) restricts its scope to the instances where the risk of violence is the greatest.

This interpretation undeniably puts the expectations of the would-be burglar on the back burner. It is reasonable to assume that Bob Seger's tour bus is likely to have people inside it in the dead of night, and that a Ford Mustang is not. It is similarly reasonable to make the same assumptions with regard to a single-family house and a Pizza Hut, respectively. But it also makes sense to prioritize the *actual* risk of violence inherent in a burglary over the perpetrator's *expected* risk of violence. For one thing, real risk is more important than expected risk.

For another, the would-be burglar can always negate the risk entirely by not committing burglary in the first place. *See Sims*, — F.3d —, 2019 WL 3789294, at *3.

2.

Our analysis does not end there, however. Recall that our understanding of generic burglary is anchored by the ways in which the term was "used in the criminal codes of most States" at the time the ACCA was passed. *Taylor*, 495 U.S. at 598; *see Stitt*, 139 S. Ct. at 406. To answer the question presented in *Stitt*, the Supreme Court examined "burglary statutes from 1986 or earlier that covered either vehicles adapted or customarily used for overnight accommodation or a broader class of vehicles." *Stitt*, 139 S. Ct. at 406. At the end of the opinion, the Court included an appendix listing thirty-one such state statutes. *Id.* at 408; *see also Quarles v. United States*, 139 S. Ct. 1872, 1878 (2019).

We have engaged in a similar inquiry regarding the scope of state burglary statutes as they existed at the time the ACCA was passed.[8] After examining these statutes, we conclude that at least thirty-one of them are broader than or substantially similar in scope to Ohio Revised Code § 2911.11(A)(3). *See Quarles*, 139 S. Ct. at 1877 (2019) ("A defendant's prior conviction under a state statute qualifies as a predicate burglary under § 924(e) if the state statute—regardless of its 'exact definition or label'—'substantially corresponds' to or is narrower than the generic definition of burglary." (quoting *Taylor*, 495 U.S. at 599, 602)). Some statutes apply to vehicles generally, regardless of actual or likely presence, or use as an abode. *E.g.*, Kan. Stat. Ann. § 21–3715 (1985) (covering "any motor vehicle"); Idaho Code Ann. § 18–1401 (1981)

---

[8]*See* Ala. Code §§ 13A-7-1, 13A-7-5, 13A-7-6, 13A-7-7 (1983); Alaska Stat. §§ 11.46.300, 11.46.310, 11.81.900(b)(3) (1984); Ariz. Rev. Stat. Ann. §§ 13-1501(7)–(8), 13-1507, 13-1508 (1978); Ark. Code Ann. §§ 41-2001(1), 41-2002 (1977); Cal. Penal Code §§ 459, 460 (1983); Conn. Gen. Stat. Ann. §§ 53a-100(a), 53a-101, 53a-103 (1981); Del. Code Ann., Tit. 11, §§ 824, 825 (1979); Fla. Stat. Ann. §§ 810.02, 810.011(2) (1976); Haw. Rev. Stat. §§ 708-800, 708-810, 708-811 (1984); Idaho Code Ann. § 18-1401 (1981); Ill. Comp. Stat., ch. 38, § 19-1 (1982); Iowa Code §§ 702.12, 713.1 (1984); Kan. Stat. Ann. §§ 21-3715, 21-3716 (1983); Ky. Rev. Stat. §§ 511.010, 511.020, 511.030, 511.040 (1980); La. Rev. Stat. Ann. § 14:62 (1980); Mass. Gen. Laws Ann., ch. 266, § 16A (1966); Miss. Code Ann. § 97-17-33 (1960); Mo. Rev. Stat. §§ 569.010, 569.160, 569.170 (1977); Mont. Code Ann. §§ 45-2-101(40), 45-6-204 (1983); Nev. Rev. Stat. Ann. § 205.060 (1983); N.H. Rev. Stat. Ann. § 635:1 (1974); N.J. Stat. Ann. §§ 2C:18-1, 2C:18-2 (1982); N.M. Stat. Ann. §§ 30-16-3, 30-16-4 (1971); Ohio Rev. Code Ann. §§ 2909.01, 2911.11, 2911.12 (1973); Okla. Stat., Tit. 21, § 1435 (1961); Ore. Rev. Stat. §§ 164.205, 164.215, 164.225 (1983); Pa. Stat. Ann. Tit. 18, §§ 3501, 3502 (1973); S.C. Stat. §§ 16-11-310, 16-11-311, 16-11-312, 16-11-313 (1985); S.D. Codified Laws §§ 22-1-2(46), 22-32-1, 22-32-3, 22-32-8 (1979); Tenn. Code Ann. § 39-3-406 (1950); Tex. Penal Code Ann. §§ 30.01, 30.04 (1974); Utah Code Ann. §§ 76-6-201(1), 76-6-202 (1973).

(covering "any . . . closed vehicle"); Okla. Stat., Tit. 21, § 1435 (1961) (covering an "automobile . . . in which any property is kept"). Others, like the Ohio statute, focus on presence and use by the occupants. *E.g.*, S.C. Stat. § 16-11-310 (1985) (covering "any . . . vehicle . . . [w]here any person lives"); Haw. Rev. Stat. § 708-800 (1984) (covering "any vehicle . . . used for lodging of persons therein"); Ala. Code § 13A-7-1 (1983) (covering "any vehicle . . . used for the lodging of persons or carrying on business therein").

Five statutes require a bit more discussion. They contain broader language than the provisions at issue in *Stitt*, and compared to Ohio Revised Code § 2911.11(A)(3), they are broader in one way but narrower in another. New Hampshire's statute, for example, applies to "any . . . vehicle . . . adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." N.H. Rev. Stat. Ann. § 635:1 (1974). This statute requires that the structure be "adapted" (narrower than the Ohio statute) but also covers structures used for business purposes rather than solely habitations (broader than the Ohio statute). The other four statutes follow suit. Alaska Stat. § 11.81.900(b)(3) (1984); Ore. Rev. Stat. § 164.205 (1983); Utah Code Ann. § 76–6–201(1) (1973); Pa. Stat. Ann. Tit. 18, § 3501 (1973). While the limitations present in these statutes are not identical to those in the Ohio statute at issue here, identical matching is not required. Instead, the statute need only "substantially correspond[]" to the definition of generic burglary. *Taylor*, 495 U.S. at 602. The Ohio statute does so by focusing on actual presence and use, which are similar limitations as contained in the other states' statutes. Thus, the Ohio statute at issue here is no outlier. It is narrower than or similar to the majority of other states' burglary statutes from 1986 or before.

D.

We hold that the Pre-Senate Bill 2 version of Ohio Revised Code § 2911.11(A)(3) falls within the definition of generic burglary under the ACCA. It is true that the statute covers an expansive array of structures. But its presence requirement restricts the statute's scope to only those structures that carry an increased risk of a violent encounter between perpetrator and occupant. And the statute substantially conforms to the majority of states' burglary statutes as they existed when the ACCA was enacted. We therefore find that Greer's aggravated burglary convictions qualify as ACCA predicate offenses.

V.

For the reasons discussed above, we affirm the district court's judgment.